BENJAMIN F. WING *vs.* HOWARD L. HAYFORD.

Suffolk.   Nov. 16, 1877. — March 25, 1878.   COLT & AMES, JJ., absent.

If land, mortgaged to secure a promissory note, is sold under a power contained in the mortgage, and brings less than the amount of the note, an action may be maintained on the note for the balance due.

A mortgagee of land, upon breach of condition, sold the land under a power contained in the mortgage, literally complying with the terms thereof. The advertisement of sale set forth that the terms of sale would be stated at the time of the sale; and at the sale the terms were stated to be $500 down, and the balance in ten days. The estate was bid off by a person who was requested by the mortgagor to run up the estate for him, and he not having $500 with him to pay, and not asking for any delay, the estate was put up again and sold for a less sum than was previously bid. The mortgagee had notified the mortgagor that the estate would be sold, and the mortgagor was present at the sale, and made no objection thereto. *Held,* that no evidence of fraud appeared on the part of the mortgagee, or of any omission on his part to use a reasonable degree of diligence to protect the interests of the mortgagor.

Mere inadequacy of price is not sufficient to avoid a sale made under a power contained in a mortgage.

CONTRACT for the balance due on a promissory note dated May 2, 1873, for $8000, payable in three years from date to the plaintiff or order, signed by the defendant, and secured by a mortgage of land in Boston. Writ dated September 18, 1876.

Trial in the Superior Court, before *Putnam,* J., who, after verdict for the plaintiff, reported the case for the determination of this court, in substance as follows:

The mortgage given to secure the note authorized the mortgagee, on breach of condition, to " sell the granted premises by public auction in said Boston, first publishing a notice of the time and place of sale once each week for three successive weeks, in one or more newspapers published in said Boston;" and, out

of the money arising from such sale, to retain all sums secured by the mortgage, including all costs, charges and expenses incurred or sustained by reason of any failure or default on the part of the grantor to perform the condition of the deed, rendering the surplus, if any, together with an account of all such costs, charges and expenses, to the grantor. It also authorized the grantee to purchase at such sale.

When the note became due, it was not paid, nor was the last instalment of interest paid, and the plaintiff advertised the land for sale, in a newspaper published in Boston, once a week for three successive weeks. The advertisement stated that the terms of the sale would be named at the time and place of the sale. Notice was given to the mortgagor as is hereinafter stated. No other notice or advertisement of the sale was given to the general public except the advertisement in the newspaper. On the day of the sale, a red flag, with nothing but the name of a duly licensed auctioneer upon it, was fixed in one of the windows of the building on the mortgaged premises, and projected out over the sidewalk. Prior to the call for a bid, and after waiting ten or fifteen minutes after the hour, six or seven persons being present, the auctioneer read the notice, and announced that the sum of $500 was to be paid down by the purchaser, and the balance in ten days, or on delivery of the deed. This statement was made loudly, in the hearing of all. He made no speech to the audience, did not recommend the estate in any way, and testified that he never did so at a mortgagee's sale. He stood inside of the front door, or on the threshold of the door, and Charles P. Lovell stood in front of him, on the sidewalk. He then called for bids. The plaintiff's son bid $3000, Lovell bid $5000, the plaintiff's son bid $5500, Lovell bid $7900, and the estate was struck off to him. The auctioneer then called upon Lovell for the deposit money of $500, and asked him to sign the memorandum of sale. Lovell said that he did not understand, before he came to the sale, that anything was to be paid down. The auctioneer replied that he must have heard the announcement, and if he was not prepared to pay the $500, the estate must be put up again. Lovell said that the amount was too large, that he did not come prepared to pay any money. He did not ask for any delay, and was a stranger to the auctioneer.

The auctioneer then waited five to eight minutes, until satisfied that Lovell could not or would not comply with the terms, and then put the estate up again, stating anew the terms and conditions of the sale. The son of the plaintiff made a bid of $3000, as before. No other bids were made, though called for, and the estate was struck off to him for that sum. The auctioneer did not require any deposit from him, not supposing it necessary, knowing that he was the son of the mortgagee, and understanding that it was purchased on his account.

The plaintiff testified that, before the sale, he agreed with the auctioneer upon the terms of sale which were announced; that he was present at the sale, and heard the auctioneer announce the conditions, and saw Lovell, who stood near him on the sidewalk, and heard him make his first bid; that Lovell asked for no delay; that, before the property was advertised, he saw the defendant about the payment of the note, and told him he should foreclose by sale; that the defendant promised to see him, but did not; that he went twice to see him, and asked the defendant why he had not come to see him as he had promised, and that the defendant replied that he had left it all in the hands of his attorney; that he then advertised the property three times only in one newspaper. There was no evidence that he did anything else in regard to the sale, except as herein stated. He further testified, that, being willing to purchase the property, he had, acting under the advice of his counsel, who told him it was better to have some third person buy the property and then take the conveyance through him, authorized his son to go as high as $6000 for the property, and his son had bid at the sale, and made the first bid of $3000, and the third bid of $5500, when Lovell immediately bid the $7900. He also said, in reply to a question from the defendant's counsel, that he did not state the terms of sale in the advertisement, because his counsel advised him that it was not necessary.

Sewall B. Wing, the son of the plaintiff, and the one who bid off the property, testified that he was present at the sale, and that Lovell said, when the auctioneer asked for a deposit, that he came prepared to bid and not to pay; that he did not ask for any delay, or to have the conditions waived or the deposit reduced.

This was all the evidence for the plaintiff, and it was conceded by the defendant that all the conditions of the mortgage as to the sale had been literally complied with.

The defendant testified that he was present at the sale and heard the advertisement read by the auctioneer, and the conditions requiring the deposit of $500, but did not know of them prior to the time of sale, although he had seen the advertisement in the newspaper; that he had attended at least ten sales before where no money had been required to be paid down.

Charles P. Lovell testified that he saw the notice of the sale in the newspaper; that he heard the terms of the sale announced by the auctioneer before he bid, and the announcement that $500 was to be paid down by the purchaser, but that he was ignorant of the terms of sale before the announcement at the sale; that, not hearing of it before, he went there unprepared to comply with that condition, and that the auctioneer told him that, if he could not pay anything down, he could not consider it a sale, but must put it up again; that he understood that "terms" mentioned in the advertisement of sale might mean that one, two or three hundred dollars were to be paid at the sale; that he might have had $50 with him at the sale; that he was a friend of Hayford; that Hayford saw him the day before, and told him he had better go down to the sale, and he said he would go; that Hayford asked him if he would go there and bid at the sale; that he went there at the request of Hayford, with the intention of running it up for Hayford, but not of buying it for himself.

After the sale, the plaintiff's son took a deed of the land, and conveyed the land to the plaintiff, who indorsed $2950 on the note, keeping $50 for the expenses of the sale, and rendered an account to the defendant. No objection was made to the fairness of the account, but the defendant contended that the sale was fraudulent; and that the plaintiff, if entitled to recover at all, was only entitled to recover the difference between the amount due on the note on the day of the sale, and the amount bid at the sale by Lovell, less the expenses of the mortgagee.

Upon the above evidence, the judge directed the jury to return a verdict for the plaintiff for the amount claimed, and reported the case to this court.

If the rulings were correct, judgment was to be entered on the verdict; if the case should have been submitted to the jury, the verdict was to be set aside, and a new trial ordered.

*J. P. Treadwell*, for the defendant.

*F. C. Welch*, for the plaintiff.

ENDICOTT, J. The court is of opinion that judgment must be entered on the verdict. The plaintiff had the right to sell the premises by auction, upon breach of the conditions of the mortgage, and could himself become the purchaser. If the proceeds of the sale were not sufficient to pay the note, an action could be maintained for the balance. *Draper* v. *Mann*, 117 Mass. 439. It appears that there was a breach of the conditions; that the defendant was notified, before the advertisement, that the premises would be sold unless the note was paid, but failed to take any action. The sale was duly advertised, the defendant saw the notice, attended the sale, and requested Lovell to be present and bid on the property. He made no objection at the sale to any of the proceedings.

We fail to find any evidence of fraud on the part of the plaintiff, or any ground for saying that the plaintiff omitted to use a reasonable degree of diligence to protect the interests of the defendant. There is no evidence that Lovell was present as agent of the defendant to buy the property. Neither Lovell nor the defendant so testified, but Lovell did state that he was there with the intention of running it up for the defendant. As matter of law, it cannot be said that it was unreasonable to require $500 to be paid down by the purchaser. The literal terms of the power of sale would authorize a sale for cash. *Pope* v. *Burrage*, 115 Mass. 282. And it does not appear that Lovell asked for delay that he might comply with the terms. No question was made, at the sale or in the argument addressed to us, that the auctioneer exceeded his authority in putting up the property a second time, after Lovell had failed to comply with the terms of sale. The case therefore is to be treated, so far as the inadequacy of the price is concerned, as if there had been but one attempt to sell, namely, the last, when the son of the plaintiff bid it in. Mere inadequacy of price is not sufficient to invalidate a sale. *King* v. *Bronson*, 122 Mass. 122. 2 Perry on Trusts, § 602 *z*. No evidence was offered of the actual value of

the property; the only fact relied on in this connection by the defendant is, that the plaintiff authorized his son to bid a much higher sum than it actually sold for.

*Judgment on the verdict.*