FREDERICK S. ANTOINE *vs.* COMMONWEALTH TRUST COMPANY & others.

SAME *vs.* ATLANTIC NATIONAL BANK & others.

Suffolk.     December 3, 1928. — February 12, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Mortgage,* Of personal property: foreclosure. *Fraud. Conspiracy. Auctioneer. Negligence,* In foreclosure of mortgage. *Actionable Tort.*

At the trial of an action of tort by the assignee for the benefit of creditors of a corporation, a mortgagor of personal property, against the mortgagee and a stockholder of the mortgagor who had purchased the property at a foreclosure sale, the plaintiff contended that the foreclosure was made in a wrongful and negligent manner and that the defendants conspired to defraud the plaintiff. It appeared that the mortgage note had become overdue before the foreclosure, which was commenced after the plaintiff had been requested repeatedly to pay the note; and that the stockholder bought the property with his own funds. There was no evidence that the mortgagee knew of the stockholder's intention to buy before the sale, nor that the stockholder and the mortgagee had any conversation relative to the sale of the property before the foreclosure, nor that the stockholder attended the sale with the intention of buying. *Held,* that

(1) The gist of the plaintiff's cause of action was the alleged tortious acts by the defendants in the conduct of the foreclosure proceedings: without proof of such acts, the defendants could not be held liable even if they acted in concert;

(2) There was no evidence of any combination on the part of the defendants.

The mortgage above described authorized the mortgagee, upon breach of condition, to sell the property, which consisted of machinery and equipment in a factory, at public auction after giving notice of the time and place of the sale. There was evidence that the foreclosure sale began at the time and place specified in a notice given by the mortgagee, there being from fifty to seventy-five persons then present; that the auctioneer for about half an hour endeavored to sell the property both as a whole and piecemeal, but received only small bids for two of the articles; that there then was an intermission for over an hour, during which time the auctioneer, the mortgagee's attorney and the stockholder conferred; that the auction thereupon was resumed, the mortgagee's attorney announcing that the mortgagee would "grant terms" instead of requiring cash, and the auctioneer announcing that he would sell all the property for a lump sum, and that he had a bid of about $5,000; that such bid was by the stockholder; that, there being no other bids, the property was knocked down to him at that price; and that the mortgagor's attorney objected to the resumption of the auction on the ground that many persons had left during the intermission, and requested that the auction be postponed and advertised again. There was some evidence that the property was worth $12,000. At the close of the evidence the trial judge ordered a verdict for the defendants. *Held*, that

(1) The temporary adjournment of the sale, the change in the terms of the sale from cash to the granting of credit, and the refusal to postpone the sale after the intermission were all matters within the discretion of the auctioneer;

(2) There was nothing to show that such discretion was exercised in bad faith or that the auctioneer was negligent;

(3) There was no evidence that the defendants intended that the highest price obtainable should not be secured;

(4) In the absence of bad faith or negligence, the sale should not be set aside merely on the ground that the price received was inadequate; and the evidence as to the value of the property did not warrant a finding of bad faith or negligence;

(5) The verdict properly was ordered for the defendants.

Two ACTIONS OF TORT. Writs dated January 26, 1925.

Material evidence at the trial of the actions together in the Superior Court before *Raymond*, J., is stated in the opinion. At the close of the plaintiff's evidence, the judge ordered a verdict for the defendant in each action. The plaintiff alleged exceptions.

*J. B. Jacobs*, for the plaintiff.

*J. W. Worthen*, for the defendants.

CROSBY, J. These are actions of tort to recover for the alleged wrongful and negligent foreclosure of a chattel mort-

gage, and for an alleged conspiracy entered into by the defendants to defraud the plaintiff.

On March 18, 1921, Baker & Cassidy Co., a corporation engaged in the business of manufacturing and selling finished lumber for the interior of buildings, gave to the defendant Commonwealth Trust Company its note for $5,500, payable on demand, and secured by a mortgage of machinery and equipment. On January 13, 1923, the corporation made an assignment to the plaintiff for the benefit of its creditors. The plaintiff was a public accountant who had balanced the books of the corporation and had prepared its tax returns, but so far as appears was not familiar with the value of machinery like that owned and used in the business of the corporation. Before the assignment $1,000 had been paid on the principal of the note, and the interest was paid to May 1, 1923. After the assignment the plaintiff, as assignee, carried on the business and paid a dividend of about ten per cent, amounting to about $2,000, to the original creditors of the company, notwithstanding the fact that he owed $4,000 for debts which he had contracted as assignee. The officers of the Commonwealth Trust Company were dissatisfied with the plaintiff's management, and decided to foreclose the mortgage. There was evidence that the plaintiff had been repeatedly requested to pay the note; that as no part of the principal was paid by him foreclosure proceedings were instituted; and that thereafter the sale had been postponed twice at his request.

The evidence tended to show that the plaintiff had endeavored to sell the business as a going concern by placing it in the hands of a broker, by advertising it in two Boston newspapers, and by interviewing a large number of prospective purchasers. His efforts in this direction continued for two months before the auction sale took place, but he received no offers for the property.

On May 26, 1923, notice in accordance with the requirements of the mortgage was given of the foreclosure sale to be held on June 20 at eleven o'clock in the forenoon. On June 20, 1923, at the appointed time and place the sale by auction began. There was evidence that there were from

fifty to seventy-five persons present; that for at least fifteen minutes after the sale started the auctioneer endeavored to sell the property as a whole, but received no bids therefor; that he then announced he would sell the various articles described in the mortgage separately; and that he secured bids for two machines, one of $125 and one of $50. There was then an intermission lasting until about a quarter to one, during which the trust company's attorney, the auctioneer and the defendant Cassidy, who was one of the principal stockholders of Baker & Cassidy Co., were in the office of the company together. At this time the attorney talked over the telephone with the defendant Goddard, who was the manager of a branch of the defendant trust company, and thereafter reported that Goddard said he was satisfied that they could not get a fair price "by selling the stock at piecemeal."

Counsel for the trust company then announced to all present at the auction that the bank would "grant terms" instead of requiring cash. The plaintiff's counsel objected to the sale proceeding further on the ground that a number of persons who had been present had left. The auctioneer announced that he was going to sell all the property covered by the mortgage for a lump sum; that he had a bid of $5,250 for the machinery and equipment covered by the mortgage. As there were no other bidders the sale was made on the bid as stated. The auctioneer at first refused to reveal the name of such bidder, but at the request of the plaintiff's attorney said that it was the defendant Cassidy. There was evidence that the plaintiff's counsel also protested against the sale at the time the auctioneer announced the bid of $5,250, on the ground that because of the delay many persons had left, and he suggested that the sale be postponed and again advertised; that the sale had been postponed at 11:30 or 11:45 A.M., and resumed shortly before one o'clock. The Commonwealth Trust Company, after the foreclosure sale and previous to the commencement of these actions, became consolidated with the Atlantic National Bank, one of the defendants in the second action.

It is not contended that the mortgage note was not over-

due, and unless there was some illegality in the foreclosure proceedings these actions cannot be maintained. If the acts of the defendants in the foreclosure proceedings were not wrongful, the allegations of conspiracy do not create a cause of action. *Farquhar* v. *New England Trust Co.* 261 Mass. 209. Conspiracy on the part of the defendants to commit a wrongful act, as alleged in the declaration, is not disclosed by the record. There is no evidence to show that before the sale Goddard, representing the trust company, had any conversation with the defendant Cassidy relative to the sale of the property under the foreclosure sale. Cassidy, upon the undisputed evidence, furnished $1,000 from his own funds to make the first payment and borrowed the balance from the trust company upon a note secured by a mortgage on property of his wife. The foundation of the actions in the several counts of the declaration in each case is the alleged tort committed and the damage resulting therefrom. To charge the defendants "it is necessary to prove a combination or joint action on their part, and the allegation of a conspiracy may be a proper mode of alleging such joint action; but for any other purpose it is wholly immaterial." *Randall* v. *Hazelton*, 12 Allen, 412, 414. *Holden* v. *J. Stevens Arms Co.* 230 Mass. 266, 268. *Farquhar* v. *New England Trust Co.*, *supra.* If, in the foreclosure proceedings, the trust company acted wholly within its legal rights, the motive of its officers and representatives in foreclosing the mortgage is unimportant. *Willett* v. *Herrick*, 258 Mass. 585, and cases cited at page 604. There is no evidence in the record of any combination or conspiracy between the defendants, or that any of them were actuated by an improper motive in the foreclosure proceedings. So far as appears, the first knowledge Goddard had that Cassidy intended to bid off the property was after the sale; there was no evidence tending to show that Cassidy went to the sale for the purpose of buying the property. He was interested as one of the principal stockholders in having it sold for as high a price as could be obtained. The evidence that an attorney who formerly represented Baker and Cassidy stated at a meeting of the creditors on May 22, 1923, that his clients objected to the sale and

that "There are more ways than one of getting the property back for my clients," did not have any tendency to show a conspiracy on the part of the defendants. At that meeting none of the defendants, so far as appears, was present or represented, and the judge rightly so ruled.

The postponement of the sale fails to show improper conduct on the part of the auctioneer who, so far as appears, endeavored to obtain the highest price. If he believed that he could sell the property as a whole rather than in separate parts, and changed the terms of sale from cash by giving credit to the purchaser, these were matters within his discretion so long as he acted in good faith. The mortgage authorized the mortgagee upon breach of condition to sell the property at public auction, but did not specify any particular manner of conducting the sale. The mortgagee was required to give fifteen days notice in writing of the time and place of sale, or to advertise such notice once a week for three successive weeks in some newspaper published in Boston. There is no evidence to justify a finding that the representatives of the bank intended that the sale should be made to Cassidy, nor a finding that they intended that the highest price obtainable should not be secured. So far as appears a larger sum was realized by accepting the bid of Cassidy than otherwise would have been received. The agreement that the purchaser could pay partly in cash and the balance by a secured note apparently resulted in the higher price being obtained. *Model Lodging House Association* v. *Boston,* 114 Mass. 133. *Pope* v. *Burrage,* 115 Mass. 282. *Wing* v. *Hayford,* 124 Mass. 249. *Donahue* v. *Parkman,* 161 Mass. 412. See *Clark* v. *Olejnik,* 240 Mass. 215; *Kennell* v. *Boyer,* 144 Iowa, 303. The auctioneer could properly change the terms of sale for cash and grant credit.

The temporary postponement of the sale violated no rights of the plaintiff. *Rowley* v. *D'Arcy,* 184 Mass. 550. Even if the price obtained was inadequate, that alone in the absence of bad faith or negligence was not sufficient to avoid the sale. *Wing* v. *Hayford, supra. Gadreault* v. *Sherman,* 250 Mass. 145, 150. The refusal of the auctioneer to adjourn the sale after the bid of Cassidy had been made was not improper.

It was a matter resting in the sound discretion of the auctioneer. There is nothing to show that further adjournment would have been likely to result in a price being obtained higher than the bid of Cassidy. If we assume, without deciding, that the certificate, filed after the sale by Cassidy, in connection with the formation of a new corporation, which stated the value of the machinery of that corporation to be $12,000, was admissible in evidence, we perceive no error. ' The certificate was insufficient to show bad faith or negligence in the foreclosure of the mortgage. *McCarthy* v. *Simon*, 247 Mass. 514, 521.

As there was no evidence which would warrant a finding that the mortgage was improperly foreclosed or that the defendants acted in bad faith or negligently, the exceptions in each case must be overruled.

*So ordered.*