JOHN L. DesLAURIES *vs.* DENNIS H. SHEA & others.

Suffolk.   November 4, 5, 1936, March 7, 1938. — March 28, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, QUA, DOLAN, & COX, JJ.

*Conspiracy.   Actionable Tort.   Mortgage,* Of real estate: foreclosure. *Practice, Civil,* Judgment, Death of party.

In the absence of evidence of a peculiar power of coercion possessed by a bank, mortgagee of real estate, and purchasers at a sale in foreclosure of the mortgage, or of any other exceptional circumstances, an action of tort for conspiracy could not be maintained by the mortgagor against them whether the foreclosure was lawful or unlawful.

A finding, at the trial of an action by a mortgagor of real estate against the mortgagee and the purchaser at a foreclosure sale, that the sale was not conducted in good faith and with due diligence and was unlawful would not have been warranted by evidence that there was a substantial disparity between the sale price, the value of the real estate and a price which, by an agreement which had expired nearly three months before the sale, the purchaser had agreed to pay the mortgagor for a clear title; that the sale took place at a summer

resort in December; of lack of notice of the sale to the second mort-
gagee and creditors, one of whom had requested notice; of the fact
that the mortgagee's attorney in the foreclosure proceedings also
had acted for the purchaser as to the title in connection with the
previous agreement for sale, and had disapproved the title; that the
purchase price at the foreclosure sale was just above what the mort-
gagee thought was due him; and that, after the sale, the purchaser
also paid the mortgagee an amount still due him.

The death of the plaintiff in an action after the ordering of a verdict
against him and while his exceptions were pending in this court, did
not cause the action to abate even if it was upon a claim which did
not survive, but, upon the exceptions being overruled, judgment was
ordered entered *nunc pro tunc* as of a date previous to the death; and
there was no necessity to grant the plaintiff's administrator leave to
appear and prosecute the action.

TORT. Writ in the Superior Court dated April 7, 1931.

The trial was before *Brown*, J. The plaintiff having died
while the case was under advisement by this court, the
administratrix of his estate filed a motion in this court for
leave to appear and prosecute, and the defendants filed a
motion to dismiss the action.

The case was argued at the bar in November, 1936,
before *Rugg*, C.J., *Field, Donahue,* & *Qua,* JJ., and in
March, 1938, before *Rugg*, C.J., *Field, Lummus, Dolan,* &
*Cox,* JJ.

*H. Snyder,* (*S. L. Bailen* with him,) for the plaintiff.

*R. B. Owen,* (*E. R. Anderson* with him,) for the defend-
ants.

FIELD, J. This action of tort for conspiracy to defraud
the plaintiff of his equity in certain real estate in Scituate
was brought in the Superior Court against the Cohasset
Savings Bank, the mortgagee thereof, Dennis H. Shea and
William H. Harney. The judge submitted to the jury a
special question "as to what the fair market value of this
property was at the time of foreclosure, December 14, 1929,"
and the jury answered $25,500. The judge then directed a
verdict for the defendants and reported the case for the
determination of this court in accordance with an agreement
of the parties that, if the direction of the verdict was error,
judgment should be entered for the plaintiff in an amount
depending upon the decision by this court of certain ques-

tions of law relating to damages, but that, if the direction of the verdict was not error, judgment should be entered thereon.

First.  There was no error in the direction of a verdict for the defendants.

These facts are undisputed: The plaintiff and his wife took title to the premises in question in 1923 as tenants by the entirety.  October 27, 1925, they gave a first mortgage to the defendant bank for $15,000.  December 28, 1926, the plaintiff was adjudicated bankrupt.  November 4, 1927, he was discharged.  July 13, 1929, the plaintiff and his wife entered into an agreement with the defendants Shea and Harney for the purchase and sale of such real estate for $24,500, the premises "to be conveyed on or before August 12th, 1929 by a good and sufficient quit claim deed . . . conveying a good and clear title to the same free from all incumbrances."  The time for the performance of the agreement was extended three times.  The final extension terminated September 28, 1929.  The defendant bank foreclosed its mortgage by a sale held on December 14, 1929, at which the bank and the defendants Shea and Harney were the only bidders.  Shea and Harney purchased the real estate for $3 "more than the amount which the Treasurer of the Bank supposed was due to the Bank on the first mortgage."  There was evidence that the sale price was $16,815.

It must be taken that the verdict was directed by the judge with the declaration before him and in view of its averments.  His action cannot be reversed unless the evidence considered in connection with the special finding of the jury — which was warranted by the evidence — warranted a verdict for the plaintiff under the declaration. *Brasslavsky* v. *Boston Elevated Railway*, 250 Mass. 403, 404. *Aldworth* v. *F. W. Woolworth Co.* 295 Mass. 344, 345.  The declaration alleges in substance a conspiracy between the defendant bank and the other defendants to obtain for such other defendants title to the plaintiff's real estate at a price substantially lower than the price fixed by the agreement of purchase and sale and also substantially lower than the fair value of such real estate, through the

medium of an unlawful foreclosure sale.  Clearly a finding
was warranted that the price at which title to the real
estate was obtained by these other defendants was sub-
stantially lower than the price fixed by the agreement
and than its fair value.  We pass without discussion the
allegation in the declaration that these defendants "well
knew that the price for which they had agreed to purchase
said real estate was considerably lower than a fair market
value thereof, because of the fact that strict necessity and
demands for the payment of the mortgage by the Defendant
Cohasset Savings Bank made it imperative and compelling
that said property should be sold by the Plaintiff even at a
sacrifice," for the plaintiff properly does not contend that
he sustained a legal injury by reason of entering into the
purchase and sale agreement in the circumstances disclosed
by the evidence.

There can be no independent tort for conspiracy unless
in a situation "where mere force of numbers acting in
unison or other exceptional circumstances may make a
wrong."  *Caverno* v. *Fellows*, 286 Mass. 440, 444.  *McCarthy*
v. *Hawes*, 299 Mass. 340, 344.  And in order to prove an
independent tort for conspiracy upon the basis of "mere
force of numbers acting in unison" it must be shown that
there was some "peculiar power of coercion of the plain-
tiff possessed by the defendants in combination which any
individual standing in a like relation to the plaintiff would
not have had."  *Cummings* v. *Harrington*, 278 Mass. 527,
530.  See *Johnson* v. *East Boston Savings Bank*, 290 Mass.
441, 445–448.  See also *Willett* v. *Herrick*, 242 Mass. 471,
478–480; *Loughery* v. *Central Trust Co.* 258 Mass. 172,
175–176.  The evidence in this case shows no peculiar
power of coercion possessed by the defendants in com-
bination which would not ordinarily have been possessed
by mortgagees and purchasers at foreclosure sales.  We
need not attempt to define the "exceptional circumstances"
which might furnish a basis for an independent action of
tort for conspiracy.  Compare *Loughery* v. *Central Trust
Co.* 258 Mass. 172, 176.  No such exceptional circumstances
are shown.  If the foreclosure was itself lawful there can

be no independent action of tort for conspiracy. *Antoine* v. *Commonwealth Trust Co.* 266 Mass. 202, 206. Harm resulting to the plaintiff from the exercise by the bank, by legal means, of its legal right to foreclose would not create a cause of action. See *Willett* v. *Herrick,* 258 Mass. 585, 604. Such a foreclosure by the bank would not be "an intentional invasion of a legally protected interest without legal justification," which would create liability. See *Ross* v. *Wright,* 286 Mass. 269, 271, and cases cited. On the other hand, if the foreclosure was unlawful the gist of the action was not conspiracy but the unlawful foreclosure and damages resulting therefrom. The allegation of conspiracy does not change the nature of the cause of action. It is at most an allegation that the alleged wrongful acts were done jointly by the defendants. *Randall* v. *Hazelton,* 12 Allen, 412, 414. *Bilafsky* v. *Conveyancers Title Ins. Co.* 192 Mass. 504, 506. *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 214. *Antoine* v. *Commonwealth Trust Co.* 266 Mass. 202, 206. *Caverno* v. *Fellows,* 286 Mass. 440, 443–444. The action, therefore, cannot be maintained as an action of tort for conspiracy.

The evidence did not warrant a finding that the foreclosure was unlawful. It is not disputed that there was a breach of the condition of the mortgage prior to the events relied on by the plaintiff to show wrongdoing on the part of the defendants. Compare *Rogers* v. *Barnes,* 169 Mass. 179. And it could not have been found that there was any binding agreement between the parties to the mortgage that it would not be foreclosed. See *Sandler* v. *Green,* 287 Mass. 404, 408. The action must be maintained, if at all, on the ground that the foreclosure was unlawful because the foreclosure proceedings were not conducted in a legal manner. Such a finding could not have been made on the evidence.

So far as appears there was literal compliance with the terms of the power of sale. But, even if there was such literal compliance, failure of the mortgagee in executing the power of sale to act in good faith and with reasonable diligence would invalidate the sale. *Sandler* v. *Silk,* 292 Mass. 493, 496. Disparity between the price obtained at

the sale and the true value of the real estate alone was not sufficient to warrant a finding of lack of good faith or reasonable diligence, but it could be considered in connection with other evidence. *Sandler* v. *Silk*, 292 Mass. 493, 497. The evidence of the manner in which the sale was conducted, however, did not supply the other evidence which was required. There was evidence that no red flag was displayed, that the sale took place on December 14, 1929, which "was a rather dark, typical December day," that Scituate, where the sale took place, "was a Summer colony and that there were very few people there in the Winter," that "there would not be likely to be anybody at an auction sale in the Winter" on a foreclosure, and that this was commonly known. Present at the sale were the auctioneer, the attorney for the bank, the treasurer of the bank, a trustee of the bank, the defendants Shea and Harney and one Brooks. This evidence does not show circumstances so unfavorable for obtaining a fair price that the mortgagee was required to adjourn the sale. "A mortgagee is not bound to adjourn a sale merely because of a scarcity of prospective bidders, unless a man of ordinary prudence making a forced sale of the property as his own would have deemed it advantageous and important to do so." *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379, 383. No request is shown for an adjournment of the sale on the ground of circumstances unfavorable to obtaining a fair price. And there was no evidence that the circumstances at an adjourned sale were likely to be more favorable. Clearly the mortgagee was not required to adjourn the sale until the following summer. See *Radley* v. *Shackford*, 226 Mass. 435, 437; *Manning* v. *Liberty Trust Co.* 234 Mass. 544, 546; *Chartrand* v. *Newton Trust Co.* 296 Mass. 317, 322. Nor does the evidence go far enough to show that the sale should have been held elsewhere. Compare *Long* v. *Richards*, 170 Mass. 120, 123.

The evidence did not warrant a finding of bad faith or negligence on the part of the mortgagee in connection with notice of the sale. The evidence in regard to the newspaper in which notice was published was meager and it could not

have been found that it was unreasonable for the mortgagee to select this newspaper. Furthermore, according to the plaintiff's testimony, he had actual notice of the prospective sale from the attorney for the mortgagee, who, moreover, told the plaintiff that he, the attorney, was not going to notify the creditors and that he did not have to do so. But there is no evidence that the plaintiff did not have ample opportunity, by any means within his power, to protect his interest at the foreclosure sale, or that the mortgagee interfered with his doing so. So far as appears, the plaintiff was not present at the sale and there was no evidence that he endeavored to induce others to attend such sale and bid upon the property. See *Stone* v. *Haskell*, 212 Mass. 283, 284; *Chartrand* v. *Newton Trust Co.* 296 Mass. 317, 322.

A mortgagee ordinarily is not required, in the absence, as here, of a special agreement, to give notice of a foreclosure sale other than by publication. *Dyer* v. *Shurtleff*, 112 Mass. 165. *Johnston* v. *Cassidy*, 279 Mass. 593, 597. But there may be circumstances in which failure to give further notice is "evidence that good faith was not used to obtain the best reasonable possible price." *Sandler* v. *Silk*, 292 Mass. 493, 497. See also *Bon* v. *Graves*, 216 Mass. 440, 446–447. There was evidence that the investment committee of the defendant bank voted on October 1, 1929, to instruct the treasurer to foreclose the mortgage and that, by a letter dated October 18, the treasurer requested an attorney — who had previously acted as attorney for the bank in connection with this mortgage and who had acted for the defendants Shea and Harney in connection with the purchase and sale of the real estate — to "proceed with the legal steps necessary to complete the foreclosure." As already stated, the sale took place on December 14, 1929. It could have been found that the real estate was subject to a second mortgage and that there were numerous attaching creditors. There was no evidence, however, that the second mortgagee or any of the attaching creditors — except one hereinafter referred to — ever asked to be notified of the foreclosure. The evidence relating to this attaching creditor tended to show these facts: His case had

gone to judgment and he held an execution. On October 10 his attorney wrote to the attorney who acted for the bank and asked him "whether or not, to your knowledge, there is to be any foreclosure of the mortgage held by the Bank." This attorney, under date of October 15, wrote to the attorney for the creditor that "There have been no steps taken to foreclose . . . to my knowledge; there will, be, however, I presume, unless Mr. DesLauries pays back interest which is long overdue and also back taxes." On October 10, 1929, the creditor's attorney also wrote to the bank, stating that "We have had an attachment" on the real estate "on which we believe you have a mortgage" and that "If any foreclosure proceedings are contemplated in connection with said mortgage we would appreciate your giving us notice of the fact so that our client may be properly protected." This attorney received no reply to this letter. Previously — at some time not definitely fixed — he had telephoned to the treasurer of the bank, "asked him if there had been any steps taken to foreclose the DesLauries property, and . . . received from him the statement that no steps had been taken," and had then made a request, similar to that made in his letter of October 10. He first "discovered the property had been foreclosed . . . in January of 1930." This attorney testified that "he had received instructions from his client to take such steps as were necessary to protect his interest in the matter if the foreclosure became imminent." This evidence is less significant in its possible bearing on the price obtained at the foreclosure sale than the evidence of failure to give notice in the case of *Bon* v. *Graves,* 216 Mass. 440, 446–447, of which it was said that this circumstance standing alone would not show bad faith on the part of the mortgagee in making a foreclosure. See also *Sandler* v. *Silk,* 292 Mass. 493, 496. Nor is bad faith shown on the evidence in the case by the failure of the mortgagee to notify, other than by publication, the other attaching creditors and the second mortgagee.

The defendant bank, as mortgagee, was not required to bid at the foreclosure sale, and, if it did so, was not required

to bid either the fair value of the real estate or the amount due on the mortgage. *Gadreault* v. *Sherman,* 250 Mass. 145, 150  *Johnston* v. *Cassidy,* 279 Mass. 593, 597. *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379, 383. There was evidence tending to show that the bank bid substantially, if not exactly, the amount which its treasurer supposed was due on the mortgage, and no evidence to the contrary. If, in other respects, the sale was conducted properly in accordance with the terms of the power it would not be invalidated by the fact that the bank "was concerned in getting only the amount of its mortgage with interest and expenses," nor by the fact, of which there was evidence, that its treasurer informed the defendant Shea, at his request, at the time of the sale, of the amount which — as the treasurer supposed — the mortgage "stands the Bank." *White* v. *Macarelli,* 267 Mass. 596, 598. See also *Gadreault* v. *Sherman,* 250 Mass. 145, 150. The defendant bank was under no duty to conceal from prospective bidders the amount due on its mortgage. Nor would the fact of the disclosure of the amount supposed to be due thereon and the fact that the bid of the other defendants was only slightly larger than this amount warrant the inference that the defendant bank promised them that it would not bid more than the amount due on the mortgage in order that they might buy the real estate at the sale for a price less than its true value. And such an inference could not be drawn from the fact, of which there was evidence, that the other defendants paid the defendant bank the amount actually due on the mortgage, which was $117.50 more than the amount of their bid. Whatever may have been their motive in making the payment it does not appear that it was made in pursuance of a previous agreement with the bank.

The plaintiff, in support of his case, relies on evidence relating to the purchase and sale agreement between the plaintiff and the defendants Shea and Harney, particularly evidence that the attorney who acted for the defendant bank in connection with the mortgage passed upon title to the real estate for the defendants Shea and Harney, the

prospective purchasers, and refused to approve the title, ostensibly because of a "cloud" resulting from the plaintiff's bankruptcy. But the evidence did not warrant a finding that in passing upon the title this attorney acted for the bank or that his action in connection therewith interfered with a fair sale on foreclosure after the expiration of the time fixed for the performance of the agreement. Nor did the evidence of statements made by the defendant Shea and by the attorney who acted for the bank in connection with the mortgage, and for the other defendants in connection with the purchase and sale agreement, with respect to Shea's buying at a possible foreclosure sale, show any agreement or intention on the part of the bank to foreclose in an improper manner. There was other evidence which need not be recited.

None of the circumstances of the foreclosure which the evidence tended to show, standing alone, warranted a finding that the defendant bank failed to act in good faith and with reasonable diligence. But circumstances which, standing alone, are insufficient to warrant such a finding may, taken collectively, be sufficient. See *Bon* v. *Graves*, 216 Mass. 440, 447. This is not the situation in the present case. The circumstances disclosed by the evidence, in the aspect thereof most favorable to the plaintiff, did not warrant a finding that the defendant bank, in foreclosing the mortgage, had any purpose other than to secure payment of its loan and to obtain the best reasonably possible price for the mortgaged real estate, or that it failed to act with reasonable diligence to obtain those results. See *White* v. *Macarelli*, 267 Mass. 596, 598. The case is distinguishable from *Bon* v. *Graves*, 216 Mass. 440, and *Sandler* v. *Silk*, 292 Mass. 493, and other cases relied on by the plaintiff.

Since the evidence did not warrant a finding that the foreclosure was unlawful the verdict was directed rightly, not only in favor of the defendant bank, but also in favor of the other defendants. Whether, if the foreclosure had been unlawful, the action could be maintained against any or all of the defendants, jointly or severally, under this declaration need not be decided.

Second. By the terms of the report, since there was no error in directing a verdict for the defendants, judgment was to be entered on such verdict. The case was argued in this court on November 4 and 5, 1936, but, while it was under advisement, the plaintiff died on January 3, 1937. January 6, 1937, suggestion of his death was filed in this court. February 14, 1938, the administratrix of his estate filed a motion for leave to appear and prosecute. March 5, 1938, the defendants filed a motion that the action be dismissed on the ground that it had abated by reason of the plaintiff's death. At the argument upon these motions, in which counsel for the administratrix participated, it was urged by him that the case be decided and judgment be entered *nunc pro tunc* as of some date prior to the death of the plaintiff. Since, on the record before us, the plaintiff had no cause of action, it would serve no useful purpose to determine whether any cause of action of a kind which would survive the death of the plaintiff was stated by the declaration. See *Wilkins* v. *Wainwright*, 173 Mass. 212, 214; *McGrath* v. *C. T. Sherer Co.* 291 Mass. 35, 61. Even if no such cause was stated the action would not necessarily abate where, as here, the case, in the lifetime of the plaintiff, was decided on its merits in favor of the defendants by a verdict of the jury (though directed by the judge); entry of judgment on the verdict was prevented only by the fact that questions of law involved therein were reported to this court for determination, and decision of such questions was not reached before the date of the plaintiff's death; and, as we now decide, the verdict was not vitiated by error. Judgment in such a case may be entered *nunc pro tunc* as of a date prior to the death of the plaintiff. No reason appears why such an entry should not be made in the present case. *Kelley* v. *Riley*, 106 Mass. 339, 341–342. *Wilkins* v. *Wainwright*, 173 Mass. 212, 214. *McGrath* v. *C. T. Sherer Co.* 291 Mass. 35, 61. *Barnes* v. *Barnes*, 291 Mass. 383, 386. *Rosenblum* v. *Ginis*, 297 Mass. 493, 499. G. L. (Ter. Ed.) c. 235, § 4.

Though, technically, the deceased plaintiff cannot appear by counsel, the court will hear argument in behalf of him

or his estate by an attorney of this court as *amicus curiae*. *Kelley* v. *Riley*, 106 Mass. 339, 341–342. *Barnes* v. *Barnes*, 291 Mass. 383, 385. The attorney for the administratrix, who has been heard, may be regarded as standing in such a position, even if the administratrix is not given leave to appear and prosecute the action. There is no necessity, if indeed it would be proper, to grant to the administratrix leave to appear and prosecute an action in which final judgment is to be entered as of a date prior to the death of the plaintiff. Compare *Wilkins* v. *Wainwright*, 173 Mass. 212, 214.

It follows that the motion of the defendants to dismiss the action is denied, judgment is to be entered for the defendants on the verdict as of some appropriate date between November 5, 1936, and January 3, 1937, and the motion of the administratrix for leave to appear and prosecute the action is denied without prejudice to renewing such motion in the Superior Court, if so advised, after the entry of the judgment hereby ordered.

*So ordered.*