L. GUY DENNETT & others *vs.* JOHN H. TILTON & another.

Essex.   March 30, 1917. — May 26, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Trust,* Creation.·  *Mortgage,* Of real estate.

If a man engaged in the insurance business, holds as trustee for another person a mortgage on real estate for $7,700, and, the beneficial owner of the mortgage desiring to dispose of it for cash, such trustee at the request of the mortgagor transmits to the beneficial owner the mortgagor's offer of $4,000 for the note and mortgage, and the beneficial owner declines this offer but expresses a willingness to sell the note and mortgage for $5,000, whereupon the trustee does not inform the mortgagor of this counter offer, but buys the note and mortgage for himself for $5,000, he has violated no obligation toward the mortgagor, there having been no fiduciary or contractual relation between them, and a suit in equity brought by the mortgagor against such purchaser to compel him to transfer the mortgage and note to the mortgagor on payment of $5,000 must be dismissed.

BILL IN EQUITY, filed in the Superior Court on January 17, 1916, alleging that the plaintiffs, being the owners of certain land in Haverhill, consulted the defendant Tilton as a real estate broker and employed him as their agent to procure for them a certain note and mortgage upon the plaintiff's land, and that the defendant Tilton purchased such note and mortgage on his own account, further alleging that the defendant Tilton assigned such mortgage

to the defendant Dacey, not in good faith, but as Tilton's agent "or as a straw woman;" with prayers for an injunction and an order for the transfer and conveyance of the note and mortgage to the plaintiffs upon the payment by the plaintiffs of the amount found due after an accounting.

The case was heard by *Quinn*, J., who made the findings and rulings which are quoted in the opinion. At the request of the plaintiffs the judge made the following additional findings of fact: "That, at the time the defendant Tilton undertook to transmit the plaintiffs' offer of $4,000, the plaintiffs understood as a result of Tilton's conduct that Tilton would inform them of the answer received to said offer, and that the plaintiffs were justified in so believing that the defendant Tilton would inform them."

By order of the judge a final decree was entered dismissing the bill; and the plaintiffs appealed, the evidence being reported by an order of the court.

*P. H. Kelley,* for the plaintiffs, submitted a brief.

*J. J. Winn,* (*G. Mitchell* with him,) for the defendants.

PIERCE, J. This is a bill in equity to compel the defendants on the receipt of $5,000 to transfer and deliver to the plaintiffs a note of the face value of $7,700, secured by a mortgage of real estate owned by the plaintiffs.

The plaintiffs purchased the mortgaged real estate in 1912. At the time of the purchase the Pentucket Savings Bank held a first mortgage on the property of $17,250, and the plaintiffs gave a second mortgage for $9,750 to the defendant John H. Tilton, trustee, to secure the balance of the purchase price. In June, 1914, the second mortgage was discharged, the first mortgage was increased, and a new second mortgage was given to secure a note of $7,700. Neither mortgage nor note given to Tilton, trustee, described the trust or stated for whom he was trustee; but as a matter of fact, they were taken and held by him as trustee for one Belle Green Ashe.

Belle Greene Ashe died in August, 1914. Her husband was appointed executor of her will. On March 1, 1916, the executor wrote Tilton "With reference to the Mortgage on the Mill Street property of about $6,600.00, I shall be obliged if you can arrange a loan of about that amount for me, or if this is not possible, I would like to sell the Mortgage. . . . Please cable me on receipt

of this whether you can arrange a loan, or what you are offered for the purchase of the mortgage."

Before the receipt of the letter Tilton and the plaintiffs had had some discussion about the purchase and sale of the note at a cash discount. On receipt of the letter Tilton saw the plaintiffs, and after several interviews the plaintiffs authorized Tilton to send an offer to the executor of $4,000 cash for the note and mortgage which then had a value of $6,600. The defendant Tilton cabled, "Only offer I could get on the property was from the mortgagor, and they would only give $4,000." He also sent a letter in which he stated that the price "is ridiculously low." Ashe refused the offer of $4,000, but stated that he would accept a "clear $5,000 cabled in settlement of the transfer of the Mortgage." Tilton did not communicate to the plaintiffs the fact that their offer had been rejected or the fact that the executor had written that he would sell the note and mortgage for $5,000. As regards the offer and counter offer the judge made the following findings of fact: "That at the time defendant Tilton undertook to transmit the plaintiffs' offer of $4,000 the plaintiffs understood as a result of Tilton's conduct that Tilton would inform them of the answer received to said offer, and that the plaintiffs were justified in so believing that the defendant Tilton would inform them."

Tilton took the property himself, passing title through the other defendant, and cabled the executor $4,802.04, being $5,000 and interest less a charge of $364.49 for services as trustee. The executor demanded and received the amount $364.40 deducted for services upon learning that Tilton had purchased the property for himself.

The presiding judge made the following findings and rulings: "I find that the defendant Tilton was not a real estate broker, but was engaged solely in the insurance business and was the owner and holder, as trustee, of the mortgage and note in question. I find that there was no fiduciary or contractual relation existing between the plaintiffs and the defendant Tilton, but that said Tilton, at the request of the plaintiffs, gratuitously and as a matter of accommodation and courtesy to the plaintiffs, transmitted their offer of $4,000 for said note and mortgage to the representative of the estate of the deceased *cestui que trust,* then living abroad;

that said representative wrote to said Tilton, declining said offer but expressing a willingness to dispose of said mortgage and note for a larger sum, to wit, substantially $5,000; that said Tilton did not inform the plaintiffs of said reply but took advantage of the same and assigned said note and mortgage to his own account; that no funds of the plaintiffs entered into the consideration of said assignment. I find no sufficient writings, or evidence otherwise, to take the transaction out of the statute of frauds and that neither a resulting nor constructive trust was established. The order is that a decree be entered dismissing the bill without costs."

It is the contention of the plaintiffs that the ruling "that there was no fiduciary or contractual relation existing between the plaintiffs and the defendant Tilton" is erroneous. The argument advanced in support thereof is that a "trustee named in a note and mortgage given to secure a debt is the agent or trustee of the debtor as well as of the creditor;" that "his relation therefore must be absolutely impartial between them;" that "he must act with entire fairness toward both parties and not exclusively in the interest of either;" that "he is not at liberty in his private capacity to deal with the property which is the subject of the trust so as to gain any advantage for himself at the cost either of the mortgagor or mortgagee."

The above are equitable principles which govern the responsibility of trustees who are in fact trustees in deeds of trust or in trust deeds in the nature of mortgages. "The trustee is appointed by the debtor and derives all of his power from him." *Ventres* v. *Cobb*, 105 Ill. 33. *Gray* v. *Robertson*, 174 Ill. 242. The ordinary relation of mortgagor and mortgagee is not that of trustee and *cestui que trust*. *Dobson* v. *Land*, 8 Hare, 216. *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 1, 14, note.

The findings of fact are not plainly wrong and the rulings of law were correct. *Rubenstein* v. *Lottow*, 223 Mass. 227, 228. *Corkery* v. *Dorsey*, 223 Mass. 97, 101. *Baldwin* v. *Williams*, 3 Met. 365. *McCann* v. *Randall*, 147 Mass. 81, 85. *Parker* v. *Barker*, 2 Met. 423.

<div align="right">

*Decree affirmed.*