JOHN F. FLEMING *vs.* ERNEST B. DANE & others.

Norfolk.    May 5, 1939. — September 12, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Conspiracy.    Actionable Tort.    Mortgage,* Of real estate: foreclosure.
*Pleading, Civil,* Declaration.

A declaration against an individual, a bank, and an oil corporation in
a town, set forth neither a cause of action for conspiracy nor sub-
stantive facts as to mere joint participation in tortious acts stated
with the conciseness and certainty required by G. L. (Ter. Ed.)
c. 231, § 7, Second, where there was no averment of fraud or corrup-
tion, and the averments were in substance merely that the individual
defendant and another had "commanding influence" in the manage-
ment of the bank and that they were able to exercise great influence
in the community and a "commanding influence in the determina-
tion of the board of selectmen" as to granting gasoline permits; that,
using their influence, they caused the board to refuse a gasoline per-
mit for property of the plaintiff, the granting of which would have
resulted in a lease to the oil company at a rental sufficient to enable
the plaintiff to pay a mortgage on his property held by the bank,
caused the bank to foreclose the mortgage and buy the property at
the sale, caused the oil company to refrain from bidding at the sale,
and caused a subsequent sale of the property at an advanced price
to the oil company and the granting of a gasoline permit to it; and
that the bank had unwarrantably refused delivery to the plaintiff
of securities of his wife which might have been used to prevent a
breach of the mortgage.

TORT.    Writ in the Superior Court dated July 30, 1936.

Demurrers to an amended declaration were sustained by
*Donahue,* J.

*R. P. Baldwin,* (*W. J. Barry* with him,) for the plaintiff.

*D. E. Hall,* (*P. N. Jones & D. R. Pokross* with him,) for
the defendants Dane and another.

*W. F. Coles,* for the defendant Colonial Beacon Oil
Company.

*H. D. White,* for the defendant The Brookline Savings
Bank.

QUA, J.    After the decision in *Fleming* v. *Dane,* 298 Mass.
216, the declaration was amended in substantial respects,

and the action is again here upon the plaintiff's appeal from orders sustaining demurrers of all defendants.

Omitting words and sentences not directly bearing upon the essential allegations, the amended declaration may be restated as follows: For many years prior to 1934 the plaintiff owned a parcel of land in Brookline known as "Fleming Corner," subject to a mortgage of $75,000 to the defendant Brookline Trust Company. Its value was greatly in excess of the amount of the mortgage, but it could not then be sold at forced sale to advantage. Its greatest value lay in its peculiar adaptability for use as a gasoline filling station. In 1932 the plaintiff had "negotiated" a lease of "Fleming Corner" with the defendant Colonial Beacon Oil Company at a rental of $10,000 per year, said lease to be delivered upon the plaintiff securing a permit from the selectmen for the storage and sale of gasoline. If the permit had been granted the lease would have been delivered, and the lessee would have erected valuable structures on the land, giving to it a permanent value many times the amount of the mortgage, which the plaintiff could then have paid off. As the defendants knew, the plaintiff was without means, otherwise than by leasing, to protect his equity, and in that period of depression could secure no new loan while the property remained vacant and unleased. A permit would have been granted to the plaintiff, a lease delivered, and the plaintiff's equity preserved, but for the conspiracy of the defendants and their acts pursuant thereto, as hereinafter set forth. The defendant Dane was president of the defendant trust company and the largest stockholder therein "and of commanding influence in its management." The defendant Cousens [who, however, had died, and whose executor had been dismissed from the action before the amendment to the declaration was allowed] was a director of the defendant trust company and of the defendant Brookline Savings Bank. "The individual defendants . . . [Dane and Cousens] had and were able to exercise great influence in the community and in the situation above described, and in particular had a commanding influence in the determination of the board of selectmen" as to the granting or refusal of gasoline per-

mits and also as to whether the defendant trust company should foreclose mortgages. (There is a further incidental statement that Dane and Cousens "controlled" the trust company and the savings bank, although the context seems to limit this to "prior to 1932.") When, in 1932, the plaintiff had succeeded in negotiating his lease with the oil company "the other defendants formed a plan and conspiracy to deprive the plaintiff of his equity in the property without compensation to him and for their own advantage." The plan included these "steps":

(1) So to use their influence with, and power over, the selectmen as to prevent them from granting a permit to the plaintiff.

(2) To convince the oil company that no permit could be obtained without the consent of the other defendants and thus to induce it to become a party to said plan and to agree not to bid when the property should be offered at a foreclosure sale, but to buy it thereafter from the mortgagee trust company "at a greatly reduced price."

(3) To foreclose the mortgage by sale at a price "far below its value" by reason of said denial of a permit and the agreement of the oil company not to bid.

(4) To withdraw their opposition to the granting of a permit and to obtain a permit for the oil company.

(5) To sell the property to the oil company "at a greatly enhanced price."

Pursuant to this plan "the defendants" took these steps:

(a) Concealing the plan and pretending to act from proper motives, "by the expression of their wishes to, and the exercise of their influence on, the board of selectmen" they "caused successive petitions by the plaintiff for such permits to be denied . . . ," although but for the combined influence of the defendants the selectmen would have granted a permit and denied it solely because of that influence "exerted upon them to that end."

(b) After the denial of the plaintiff's last petition in February, 1934, the defendants caused the trust company to foreclose its mortgage and to buy in "Fleming Corner" at the foreclosure sale on March 14, 1934, for $78,000.

(c) By agreement among the defendants the oil company, which, but for the agreement and the plan, would have paid a price far in excess of the amount of the mortgage, refrained from bidding.

(d) The defendants caused a petition for a permit to be filed by the oil company, which was granted on June 4.

(e) On July 6 the trust company transferred the land to the oil company for $98,000.

The declaration then continues with allegations that the plaintiff's wife had deposited securities to the value of $10,000 with the trust company for safe keeping; that before the foreclosure of the mortgage the plaintiff as his wife's representative had demanded those securities from the trust company, presenting her order for their delivery, and had stated to the trust company that his wife was physically unable to come to it, that at times her mind was a blank, and her memory impaired as a result of the plaintiff's failure to get the permit which would have enabled him to protect the property from foreclosure; and that she wished her securities delivered to the plaintiff in order that she and he might, with the avails thereof, pay the interest on the mortgage which otherwise neither of them was able to pay, all of which statements were true, as the defendants knew, but that the trust company, in pursuance of said conspiracy, refused to deliver said securities to the plaintiff.  Then follows a reference to the release upon which rested the decision in *Fleming* v. *Dane*, 298 Mass. 216, with allegations, substantially different from those appearing in the former declaration, designed to show that the release was obtained by duress.  The declaration ends with this paragraph,

"By the aforesaid means the defendants, acting in combination, and using their combined influence to accomplish ends which none of them could have accomplished alone, deprived the plaintiff of his property, to his great damage, as set forth in the writ."

From the general structure of the declaration, as well as from its allegations of power and influence on the part of the individual defendants, it would seem that this declara-

tion was intended to state a cause of action for true conspiracy, that is to say a cause of action which involves more than a mere joint tort and the gist of which consists in the combination itself making unlawful a course of conduct that might not give rise to liability if carried on by a single individual. The attempt is to state a case like *Willett* v. *Herrick*, 242 Mass. 471. The attempt has not succeeded. The controlling proposition of law was recently stated by this court in *DesLauries* v. *Shea*, 300 Mass. 30, at page 33, in these words, "There can be no independent tort for conspiracy unless in a situation 'where mere force of numbers acting in unison or other exceptional circumstances may make a wrong.' . . . And in order to prove an independent tort for conspiracy upon the basis of 'mere force of numbers acting in unison' it must be shown that there was some 'peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had.'" The most common illustration of such a "conspiracy" is to be found in the combined action of groups of employers or employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals. *Pickett* v. *Walsh*, 192 Mass. 572, 582. *Burnham* v. *Dowd*, 217 Mass. 351, 358. Outside of this and related or similar fields, instances of conspiracy which is in itself an independent tort are rare and should be added to with caution. In *Willett* v. *Herrick*, 242 Mass. 471, the combination of bankers with the consequent control of available sources of credit as set forth in the declaration was held to supply the necessary element. The case at bar discloses no equivalent. There was no force of numbers. The coercive power resided in only two individuals, to whom perhaps we should add the• trust company as the holder of the mortgage, although according to the declaration its conduct was determined by Dane and Cousens. That power consisted in nothing more than the power to make decisions as to foreclosures by a bank (a power which must be exercised

by someone in behalf of every bank) and the power to exercise in some manner not stated "a commanding influence" in the decisions of the selectmen as to granting permits. We see nothing in the exercise of these powers by Dane and Cousens in association with each other and with the other defendants as alleged which gives to their acts in combination any greater or different tortious quality than would be ascribed to the same acts if performed by separate individuals only. We conclude, therefore, that the allegations of conspiracy in this declaration have no further effect than to show that any tort disclosed by the declaration to have been committed was a joint tort for which the several defendants who participated in it would be jointly liable. *Parker* v. *Huntington,* 2 Gray, 124. *Randall* v. *Hazelton,* 12 Allen, 412. *Boston* v. *Simmons,* 150 Mass. 461, 463. *Bilafsky* v. *Conveyancers Title Ins. Co.* 192 Mass. 504. *Perry* v. *Hayes,* 215 Mass. 296. *Loughery* v. *Central Trust Co.* 258 Mass. 172, 176. *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 214. *Antoine* v. *Commonwealth Trust Co.* 266 Mass. 202, 206. *Cummings* v. *Harrington,* 278 Mass. 527, 529, 530. *Robitaille* v. *Morse,* 283 Mass. 27, 31. *Caverno* v. *Fellows,* 286 Mass. 440, 443, 444. *Johnson* v. *East Boston Savings Bank,* 290 Mass. 441. *McCarthy* v. *Hawes,* 299 Mass. 340, 344. *DesLauries* v. *Shea,* 300 Mass. 30. *Comerford* v. *Meier,* 302 Mass. 398, 401. *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 325, 326.

Eliminating conspiracy as in itself a cause of action, and regarding the allegations concerning it merely as allegations of joint participation, we fail to find the substantive facts necessary to constitute any cause of action stated concisely and with substantial certainty as required by G. L. (Ter. Ed.) c. 231, § 7, Second. See *Robitaille* v. *Morse,* 283 Mass. 27. All of the allegations of various supposed wrongs are crowded into one count, although not all are pertinent to the statement of any single tort. See G. L. (Ter. Ed.) c. 231, § 7, Fourth; *Downs* v. *Hawley,* 112 Mass. 237, 241; *Allen* v. *Codman,* 139 Mass. 136, 139; *Davis* v. *H. S. & M. W. Snyder, Inc.* 252 Mass. 29, 35. The trust company as mort-

gagee and its officers were not in a fiduciary position towards the plaintiff, except in the actual exercise of the power of sale. *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 1, 7. *Dennett* v. *Tilton*, 227 Mass. 299. *Willett* v. *Herrick*, 258 Mass. 585, 599. They had a right to foreclose a mortgage that was in default without regard to their motives, *Randall* v. *Hazelton*, 12 Allen, 412, 415, *Willett* v. *Herrick*, 258 Mass. 585, 604, *Antoine* v. *Commonwealth Trust Co.* 266 Mass. 202, 206, *Dickerman* v. *Northern Trust Co.* 176 U. S. 181, 190, and even if the motive was to get the property for themselves. See *Robitaille* v. *Morse*, 283 Mass. 27, 31. The allegations as to the possession and exercise of influence over the granting of permits by the selectmen do not make out a cause of action. The nature of this influence and the manner of its exercise do not appear. It is not alleged that influence was exercised corruptly or unlawfully. It may have taken the form of proper and cogent argument at the public hearing required to be held by G. L. (Ter. Ed.) c. 148, § 13. So far as appears there may have been excellent reasons for refusing a permit to the plaintiff and for granting one later to the oil company. So far as appears the selectmen acted in entire good faith for the public interest, as they are presumed to have done, *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 493, even if their action might have been different except for the "influence." See *Reuter* v. *Ballard*, 267 Mass. 557, 566. The allegations as to the refusal to deliver securities belonging to the plaintiff's wife upon her order do not state a cause of action in the plaintiff. If the declaration contains the germ of a cause of action under the principle of *Sandler* v. *Silk*, 292 Mass. 493, 497 (compare *DesLauries* v. *Shea*, 300 Mass. 30, 38–39), for wrongful conduct of the foreclosure by stifling bidding, which we do not decide, that subject is too deeply buried in matter wholly immaterial to it to permit us to hold that a cause of action is stated concisely and with substantial certainty as required by the statute.

*Orders sustaining demurrers affirmed.*