McEvoy, J.
INTRODUCTION
This case was before the court on May 23, 1997 for hearing on the above-captioned motion. The plaintiff alleges the defendants, members of the Winchendon Board of Selectmen and the Town of Winchendon, intentionally and wrongfully delayed the approval of her application for a liquor license. She has filed claims alleging violation of her civil rights under the Massachusetts Civil Rights Act and 42 U.S.C. §1983, as well as claims alleging intentional interference with an advantageous business relationship and civil conspiracy. [1]
For the reasons which follow, the defendants’ motion for summary judgment is ALLOWED.
DISCUSSION
A. Summary Judgment Standard
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The non-moving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. LaLonde v. Eisner, 405 Mass. 207, 209 (1989).
B. Facts
The following facts are undisputed except where otherwise noted:
On October 30, 1995, the plaintiff submitted an application for a license to sell liquor at 222 Baldwin-ville State Road in Winchendon. The Winchendon Board of Selectmen held a hearing on her application on November 27, 1995, but tabled voting on the application due to the existence of an outstanding tax and water bill on 222 Baldwinville. The Board relied on Section 21.1 of the Town of Winchendon by-laws, which prohibits the Board of Selectmen from granting a liquor license to anyone with an outstanding tax bill, such as the plaintiff.[2] The Board also noted that there was an outstanding tax bill on another piece of property, 12 High Street, but the plaintiff informed the Board that she was only the trustee of that property, and not the owner.
On December 11, 1995, the Board re-convened the hearing on the plaintiffs application, at which time the plaintiff showed receipts evidencing payment of the outstanding taxes on 222 Baldwinville. At this time, the plaintiff also offered to resign as trustee of the 12 High Street property. The Board then voted to approve the plaintiffs application for a liquor license.
*172 On December 18, 1995, the Board of Selectmen voted to reconsider their December 11 vote approving the plaintiffs application. The reason for this is disputed and is the basis for this lawsuit. The defendants claim that they believed it was premature to approve the plaintiffs application until her resignation as trustee of the 12 High Street property was recorded with the Registry of Deeds, as they were still uncertain whether her trustee status implicated Section 21.1 of the town by-laws. The plaintiff alleges that the Board undertook to delay approving her application in retaliation against the attorney who represented her at the hearing on her application, as the attorney was representing another party, his father, in an unrelated matter who had accused the defendants of unlawful and illegal acts. On December 27, 1995, nine days after the Board’s vote to reconsider, the plaintiff filed this lawsuit.
On January 8, 1996, the Winchendon Town Counsel advised the Board of Selectmen that she had reviewed the 12 High Street trust and that the plaintiff was not herself responsible for the unpaid taxes, and thus the Board could approve the plaintiffs application. Three days later, on January 11, 1996, the Board voted to approve. The plaintiff nonetheless has continued to pursue this lawsuit, alleging she was damaged due to the one-month delay in approving her application from the time the Board initially voted to approve on December 11, 1995, to the time they finally approved on January 11, 1996.
Each of the plaintiffs claims rests on the alleged motive of retaliation on the part of the defendants in delaying granting her liquor permit.
C. The Plaintiffs Theories of Recovery
1. Massachusetts Civil Rights Act
The Massachusetts Civil Rights Act, G.L.c. 12, §11H and 111, provides a private right of action “(wjhenver any person or persons . . . interfere by threats, intimidation or coercion . . . with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth ...”
Even assuming the defendants acted out of the motive alleged by the plaintiff in delaying the approval of her application, the court fails to see how this involved threats, intimidation or coercion. A direct violation of a person’s rights does not by itself involve threats, intimidation or coercion and thus does not implicate the Massachusetts Civil Rights Act. Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989). Summary judgment is thus warranted on this count.
2. 42 U.S.C. §1983
This count rests on the plaintiffs claim .that the defendants’ delay in approving her application violated her due process and equal protection rights secured by the United States Constitution.
a. Equal Protection
The plaintiff claims that she “was treated unequally as compared to other citizens similarly situated.” To make out a claim of “selective enforcement” the plaintiff must show (1) that compared with others similarly situated, she was selectively treated, and (2) that such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure the person. Yerardi’s Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of the Town of Randolph, 932 F.2d 89, 92 (1st Cir. 1991). In this case, the plaintiff essentially claims that approval of her application was delayed out of malicious intent to injure. It is unnecessary, however, to reach the question of whether the plaintiff has alleged sufficient facts to warrant an inference of malice on the part of the defendants, because the plaintiff has not produced any evidence to make out the first prong of the test. She has failed to “identify and relate specific instances where persons situated similarly in all relevant respects were treated differently." See The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989). Thus, she has not met her burden to defeat summary judgment on her equal protection claim.[3]
b. Due Process
To fashion a procedural due process claim, the plaintiff must have a protectable property interest. Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 43 (1st Cir. 1987). Property rights are creatures of state law, and thus the court must look to Massachusetts law to see if there is a constitutionally significant interest in the plaintiffs hoped-for liquor license. See id.
In Massachusetts, the issuance of a liquor license is governed by G.L.c. 138, §12 in the case of alcoholic beverages to be drunk on the premises where sold, and G.L.c. 138, §15 in the case of alcoholic beverages not to be drunk on the premises where sold.[4] Both sections state that the local licensing authorities “may” grant licenses to sell liquor. This language makes the granting of a liquor license permissive only, and not required in any circumstances specified in the statute. See Chongris, 811 F.2d at 44. Therefore, the plaintiff has no property interest in a liquor license under Massachusetts law, and thus cannot make out a due process claim.
Even if the plaintiff had a protectable property interest, the court fails to see how she was deprived of due process. The procedural due process requirement in the context of liquor licensing is two-fold: (1) the licensing authority must give the applicant adequate notice of the standards he must satisfy to obtain a license: and (2) the licensing authority must accord the applicant due process in the application of those *173 standards through a fair hearing. McCollum v. City of Powder Springs, Ga., 720 F.Sup. 985, 989 (N.D. Ga. 1989). Once a governing authority promulgates an ordinance which outlines standards for issuance of a liquor license, applicants possess a protectable property interest. Id.
It is undisputed that the plaintiff was given notice and a hearing on her application. She complains that she was not given notice prior to the defendants’ vote to reconsider approving her application until the issue of her status as trustee of the 12 High Street property could be resolved. She points to no authority, however, that would support her due process claim under these circumstances. She had the opportunity to appear, with counsel, in support of her application, and the fact that the defendants developed reservations about their initial decision did not prejudice her ability to advocate in favor of receiving the license. The court is aware of no law prohibiting a local licensing authority from changing its mind for legitimate reasons, and the plaintiff points to none.[5]
3. Interference With Advantageous Business Relationship
In order to make out this claim, the plaintiff must establish four elements: (1) that she had a contract with a third parly; (2) that the defendants knowingly induced the third party to break the contract; (3) that the defendants’ interference was improper in motive or means; and (4) that the plaintiff was harmed by the defendants’ actions. Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994); Melo-Tone Vending, Inc. v. Sherry, Inc., 39 Mass.App.Ct. 315, 318 (1995).
The plaintiff has produced no evidence on any of these elements. She has not shown that a contract existed between herself and a third party that was broken by the third party as a result of the defendants’ actions. As discussed above, other than her own assertions, she has produced nothing to support her claim that the defendants acted out of the improper motive to harm her. Finally, she has not shown how the short delay in receiving her liquor license has resulted in any damage to her.
In short, this theory simply does not fit the facts as alleged by the plaintiff, and summary judgment for the defendants on this count is warranted.[6]
4. Civil Conspiracy
Under Massachusetts law, either of two possible causes of action may be called “civil conspiracy.” Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994). The first is where the defendants, “acting in unison, had some peculiar power of coercion over the plaintiff that they would not have had if they had been acting independently.” Id., quoting Fleming v. Dane, 304 Mass. 46, 50 (1939) (“[I]n order to prove an independent tort for conspiracy upon the basis of mere force of numbers acting in unison it must be shown that there was some peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had”). The most common illustration of this type of civil conspiracy is a group of employers or employees who combine to create pressure and bring about results different from anything that could have been accomplished by separate individuals. Fleming, 304 Mass. at 50. Outside of this area, instances of conspiracy as an independent tort are rare and should be added with caution. Id.
The second type of civil conspiracy is akin to common law joint liability in tort, and involves either a common design or agreement between two or more persons to commit a wrongful act and some tortious act done in furtherance of the agreement, see Aetna, 43 F.3d at 1564, or two persons acting in concert to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another. See Therrien v. Hamilton, 849 F.Sup. 110, 115 (D.Mass. 1994). The gist of this second type of conspiracy is not the agreement, but the deceit or fraud causing damage to the plaintiff, the combination being charged merely for the purpose of fixing joint liability on the defendants. Id. (quoting New England Foundation Co. v. Reed, 209 Mass. 556, 560 (1911)); see Fleming, 304 Mass. at 51.
The plaintiff has not specified which type of civil conspiracy theoiy she is relying upon. In either case, however, she has presented no evidence, other than her bare allegations combined with “tenuous insinuation,” see Yerardi’s Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of the Town of Randolph, 932 F.2d 89, 92 (1st Cir. 1991), that could support a finding that the defendants entered into an agreement to delay approval of the plaintiffs liquor license application in order to retaliate against her attorney.[7] Because a jury could not find for the plaintiff without relying solely on speculation and conjecture, summary judgment for the defendants must be granted. See Therrien v. Hamilton, 849 F.Sup. 110, 116 (D.Mass. 1994).
CONCLUSION
The plaintiff has failed to produce evidence essential to each of her theories of liability. Therefore, the defendants are entitled to summary judgment on all counts.
ORDER
Accordingly, the court ORDERS that the defendants’ motion for summary judgment is ALLOWED.

 A count seeking an injunction ordering the defendants to approve the plaintiffs application liquor license is moot, as the Board of Selectmen did approve her application subsequent to the filing of this lawsuit.

 At the hearing, counsel for the plaintiff asserted that the by-law states that the Board “may deny” an application under these circumstances. The defendants attached a copy of the *174 by-law to their memorandum, and the language is indeed “shall deny." Counsel for the plaintiff should be more attentive to important details and should avoid making unfounded assertions in open court in the future.

 Even if the court were to reach the second prong, it would rule in favor of the defendants on the present motion. The defendants have offered as proof of their motive for voting to reconsider approving the plaintiffs application a copy of the minutes of the December 18, 1995 Board of Selectmen meeting, which indicates that the Board’s reason for delaying was its concern over the plaintiffs status as trustee of the 12 High Street property. This constitutes affirmative evidence negating an essential element of the plaintiffs case, namely, the element of improper motive. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The plaintiff has not met this evidence with evidence of her own sufficient to warrant a reasonable conclusion that the defendants’ motives were otherwise, but has merely reiterated throughout her opposition that it is her belief the defendants acted with ulterior motives. The plaintiffs evidence, in a nutshell, is that shortly after voting to approve her application on December 11, the defendants read letters sent to the Board of Selectmen by her attorney accusing the Board of unlawful acts in connection with an unrelated matter involving the attorney’s father, and that the Board became infuriated and decided to get back at the plaintiffs attorney by voting to delay approval of her application at the next meeting. This evidence amounts to “nothing more than tenuous insinuation, insufficient to allow a jury to find a denial of [plaintiffs] equal protection rights.” See Yerardi’s Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of the Town of Randolph, 932 F.2d 89, 92 (1st Cir. 1991).

 It is unclear from the summary judgment record whether the plaintiff sought a license to sell liquor at a restaurant, in which case §12 would apply, or whether she intended to operate a package store, in which case §15 would apply. The distinction is irrelevant to the court’s decision.

 The plaintiff claims that the issue of her liquor license application was not on the agenda of the Board of Selectmen’s December 18 meeting, and thus the Board should not have taken it up. The court will not involve itself in a dispute over whether the defendants followed proper meeting procedures. For the purposes of the present motion, it is sufficient to note that no violation of the plaintiffs constitutional rights occurred.

 The defendants also correctly point out that under G.L.c. 258, §10(c), the Town of Winchendon cannot be held liable for intentional torts such as interference with advantageous relations.

 Even if the plaintiff could prove these allegations, the court has serious doubts as to whether she has made out other elements of a civil conspiracy action, such as the existence of a “particular power of coercion" over her, or the commission of an unlawful act or a lawful act by unlawful means. Because the court rules as a matter of law that the plaintiff has produced no evidence that supports a reasonable inference as to an agreement on the part of the defendants, the court need not reach the issue as to the other elements.