Ferrara, John S., J.
On September 11, 2009, the plaintiffs, Gregg C. Parker (“Parker”) and Rekrap Realty, LLC (“Rekrap”), brought this action against the defendants, Wayne Salo (“Salo”) and Dixon-Salo Architects, Inc. The plaintiffs seek to recover on eight counts in contract and tort regarding services rendered to them by the defendants for the construction of a commercial building.
The defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, the defendants’ motion for summary judgment will be ALLOWED in part and DENIED in part.
BACKGROUND
The facts taken in the light most favorable to the non-moving party, the plaintiffs, are as follows.
Parker is an insurance and financial services agent operating as a sole proprietorship, Robert A. Parker Insurance and Financial Services and/or Rekrap. The businesses are run out of an office in Whitinsville, Massachusetts. Prior to the events detailed herein, Parker and his businesses operated from an old Victorian house on Church Street in Whitinsville. In or around 2005, Parker began exploring options for upgrading or changing his office space, including whether to relocate his offices into a new or existing building or to raze his Church Street building and replace it with a new building. Parker originally wanted simply to put a modular office building on the existing site, but learned that due to town permitting, he would need to retain an architect to do so. Parker had already obtained estimates of $522,430 and $350,000 from two modular building firms.
In July 2005, Parker contacted Salo, an architect with the firm Dixon-Salo Architects, Inc. At some point in 2005, Parker and Salo entered into some form of agreement for Salo to provide schematic design, design development, construction document, pricing, and construction services to Parker. Salo presented a written contract for such services to Parker, which Parker did not sign because he objected to certain terms in the document. Despite Parker’s failure to sign the written contract, Salo continued to perform services for Parker and Rekrap, and Parker rendered various payments for these services.
Between July 2005 and August 2006, Parker sought and obtained various zoning approvals for a new building. During this period, Parker was still exploring options other than constructing a new building on his own site. Once the zoning permissions were in place, Parker, using a bid package prepared by Salo, began soliciting construction bids based on preliminary plans prepared by Salo. Three firms were solicited and two submitted bids. The first, Elite Custom Homes, bid $656,820 as a flat lump sum bid. Salmon’s Contracting (“Salmon”) submitted a “rough” bid estimate of approximately $586,940 on a cost-plus basis, meaning that the owner pays the contractor the cost of time and materials, plus a percentage of that for profit. In this case, the percentage profit was five percent, such that had the estimate been correct, the five percent fee would have been $29,347, and the total cost to Parker $616,287. The price identified in a cost-plus bid is an estimate, subject to change based upon field conditions, change orders, additions and deletions by the owner, and other factors. Parker retained Salmon, the low bidder, and entered into the proffered contract. Parker based his decision in part on the advice of Salo, who had recommended Salmon. Salo and Salmon had a pre-existing relationship, and Salo assured Parker that the project could be completed for the cost quoted by Salmon. In accepting Salmon’s contract, Parker abandoned a chance to buy a nearby building for $500,000, as well as the chance to have Elite construct his building for the flat fee of $656,820.
At some point between the bid and December 16, 2006, when demolition of Parker’s existing building took place, Salo and/or Salmon revised the projected cost of the building to $650,000. However, Parker did *568 not learn of this until after the demolition, when he saw the new figure in a document sent to him by Salo. In June 2007, Parker learned the projected construction budget had grown to $780,988.88. He called for a meeting and met with Salo, Salmon, and the site contractor to discuss ways to reduce the cost of the building.
At various points during construction, Salo issued certifications for payment to the contractor. These were based on its certification that the work in question had been adequately completed. By the time the work was completed, the project had cost almost $750,000.
After the project, Salmon filed suit against Robert A. Parker Insurance and Financial Services for an unpaid balance. The insurance firm counterclaimed. The dispute, pursuant to Parker’s contract with Salmon, was submitted to binding arbitration. At some point the pleadings were amended with Parker and Rekrap being substituted for Robert A. Parker Insurance. The arbitrator awarded certain unpaid fees from Parker to Salmon, and awarded a larger offset payment from Salmon to Parker for portions of the work that were insufficiently or inadequately complete and for overbilling.
DISCUSSION
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and responses to requests for admissions under Rule 36, together with the affidavits show that there is no genuine issue of material fact and that the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as matter of law. Pederson, 404 Mass. at 16-17. The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party will not reasonably be able to prove an essential element of his case. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors, 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact for trial. Mass.R.Civ.P. 56(e); Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
I.The Standing Defense
Salo and Dixon-Salo Architects, Inc., claim plaintiffs Parker and Rekrap have no standing to pursue claims against the defendants because neither plaintiff was involved in any contract or business relationship with Salo or his firm. Rather, the defendants argue, Salo and his firm were engaged in a transaction with Robert A. Parker Insurance. It is undisputed that Parker is an individual doing business as Robert A. Parker Insurance and Financial Services and/or Rekrap Realty. Further, it is undisputed that he conveyed the property that is the subject of this matter to Rekrap, in January 2007, during the period in which this transaction was ongoing. Further, all of Salo’s negotiations and business dealings regarding the subject properly were with Parker. Therefore, the plaintiffs are appropriate parties.
II.The Collateral Estoppel Defense
Salo argues that the recovery sought against it is barred by collateral estoppel, the issues having been determined in the binding arbitration between the plaintiffs and Salmon. However, as the plaintiffs argue, the binding arbitration adjudicated only Parker’s claims against Salmon. See Miles v. Aetna Cos. and Sun Co., 412 Mass. 424, 427 (1992). In this action, Parker has made claims against Salo which are independent of any claims against Salmon. Specifically, Parker alleges Salo is in breach of a contract between them or, in the alternative, that Salo has been unjustly enriched by Parker’s payments for his services. Additionally, Parker states certain tort claims rooted in Salo’s conduct, not in Salmon’s.
III.Count I — Breach of Contract
The defendants have argued simultaneously that there was a contract which, by its terms, precludes recovery by Parker under these facts and that there was, by Parker’s admission, no contract. Both arguments fail. What Parker stated in his deposition was that there was an implied contract between himself and Salo, and that he did not sign the written contract due to concerns over some of its terms. That unsigned written contract has been provided as an exhibit. Whether it should be considered a binding contract between the parties will require further evidence. Novel Iron Works, Inc. v. Wexler Constr. Co., 26 Mass.App.Ct. 401, 407-08 (1988).[1]
Further, substantial evidence has been provided that the parties behaved as if a contract for services was in place. Therefore, an implied contract may exist even if an express contract is not found. “An implied-in-fact contract comes into being when, notwithstanding the absence of a written agreement or verbal agreement expressing mutual obligations, the conduct or relations of the parties imply the existence of a contract.” Popponosset Beach Assoc., Inc. v. Marchillo, 39 Mass.App.Ct. 586, 592 (1996).
*569 There has been sufficient evidence adduced to demonstrate that a contract, either express or implied, existed between the parties. The terms of this contract are not fully delineated. See Stagecoach Transp. v. Shuttle, Inc., 50 Mass.App.Ct. 812, 813 (2001) (unsigned written contract may be found to supply terms of implied contract). As this likely will affect the plaintiffs ability to recover pursuant to the contract, if one is found to exist, there are triable issues of material fact with respect to this count.
IV.Count II — Breach of the Implied Covenant of Good Faith and Fair Dealing
If a contract, either express or implied, is found to exist between the parties, it will include the implied covenant of good faith and fair dealing. “Every contract implies good faith and fair dealing between the parties to it.” Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 n.9 (1990). The implied covenant of good faith and fair dealing provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. ” Drucker v. Roland Win. Jutras Assocs., 370 Mass. 383, 385 (1976).
Here, Parker has alleged and provided some evidence of a contractual relationship between himself and the defendants. The plaintiffs assert that due to acts or omissions of the defendants, he did not receive the fruits of the contract for the defendants’ professional services, including their services as construction project advisor and supervisor. Salo has stated various explanations for his conduct, but has not eliminated all questions regarding his and his firm’s performance. Therefore, the plaintiffs have raised triable issues of material fact on this count.
V.Count III — Unjust Enrichment
The defendants attack the unjust enrichment claim as duplicative of the plaintiffs’ contract claims. However, there is nothing to prevent a claim or argument in the alternative. Raimondo v. Town of Burlington, 366 Mass. 450, 451-52 (1974). If the plaintiffs are unable to recover on their contract-based claims, it may be that they instead are able to recover on a claim of unjust enrichment. The case law is clear that an unjust enrichment claim, or implied in law contract claim, may lie where a contract claim fails.
A quasi contract or a contract implied in law is an obligation created by law ‘for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent . . . [Considerations of equity and morality play a large part... in constructing a quasi-contract. . .’ 1 A. Corbin, Contracts §19 (1963). It ‘is not really a contract, but a legal obligation closely akin to a duty to make restitution.’ Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.C.Cir. 1973). ‘A person who has been unjustly enriched at the expense of another is required to make restitution to the other.’ Restatement of Restitution §1 (1937).
Salomon v. Terra, 394 Mass. 857, 859 (1985).
The plaintiffs allege they paid the defendant for services including advising on and management of a construction project, but did not receive the full value of those services. Thus, they argue that Salo and his firm were unjustly enriched by being paid for services that were not rendered in full, not rendered timely, or not rendered to a satisfactory standard. They also argue that Salo and his firm earned more than they were entitled to by helping inflate the costs of construction. Salo asserts that he performed according to any agreement with the plaintiffs, and that any flaws in his performance were due to the plaintiffs’ own lack of cooperation. Therefore, because there are genuine issues of material fact, this claim will survive summary judgment.
VI.Count IV — Fraud in the Inducement
The plaintiffs complain that they were fraudulently induced by the defendants to enter into a contract with Salmon. The elements required to prove fraud in the inducement are: (1) a misrepresentation of material fact; (2) made to induce action; and (3) reasonable reliance on the false statement to the detriment of the actor. Hogan v. Riemer, 35 Mass.App.Ct. 360, 365 (1993). Reliance is an essential element of actionable fraud. Nei v. Burley, 388 Mass. 307, 311 (1983).
Here, there is a disputed issue of material fact as to whether Salo assured Parker, prior to his signing the contract with Salmon, that the price Salmon quoted was a reasonable and reliable estimate of what it would cost to construct the plans Salo drew. Parker asserts he was given this assurance, while the defendants deny this. In his deposition, Salo stated that he knew the estimate was too low, that he told Parker it was only preliminary, and that the project would inevitably cost more. In defense of his position, Salo lists a variety of factors that he states could not be known at the time and that therefore could not have been priced. However, on his list are some factors, such as the cost of complying with building codes regarding earthquakes for commercial buildings, that Parker may very well be able to prove were reasonably knowable at that point.
The plaintiffs’ argument is further assisted by the fact that Salo acknowledges he guided Parker away from accepting a bid which, while higher, was a fixed price. Finally, the plaintiffs have alleged and appear to have a reasonable prospect of proving that the defendants were aware of the upper limit of Parker’s budget. Yet, while Salo acknowledges he knew that Parker’s budget was always an issue, he encouraged Parker to enter into a construction contract he well suspected would exceed that budget. Therefore, the plaintiffs have created triable issues of fact with respect to what they were promised and whether it was reasonable to rely on Salo’s advice.
*570 VII.Count V — Unfair and Deceptive Acts or Practices — 93A violations
General Laws c. 93A makes unlawful “unfair methods of competition” and “unfair or deceptive acts and practices in the conduct of any trade or commerce.” G.L.c. 93A, §2. In deciding whether a certain practice is “unfair” under G.L.c. 93A, “the nature of the challenged conduct and [ ] the purpose and effect of that conduct. . . [are] the crucial factors.” Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995). A court assesses “(1) whether the practice is at least within the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3) whether it causes substantial injuiy.” PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
The plaintiffs’ 93A claim hinges on their negligent misrepresentaüon/negligence, conspiracy, and fraud in the inducement claims. They allege that the defendants negligently or deliberately misrepresented the likely price of the construction project and steered the plaintiffs toward a particular contractor and a particularly expensive option. They further allege that the defendants deliberately waited until after the plaintiffs had torn down their existing building to reveal the true price of the project, such that the plaintiffs would have no choice but to proceed with the building contract. Finally, they allege defendants did so to increase their own fee, a percentage of the overall cost, and that this constituted an actionable, unfair practice. Salo has offered alternative explanations for his actions, and has denied withholding information important to Parker’s decisions regarding the project. Therefore, there are triable issues of material fact that preclude summaiy judgment on this claim.
VIII.Count VI — Civil Conspiracy
Two types of civil conspiracy are recognized. In the first type, defendants work together to exert a “peculiar power of coercion [over] the plaintiff . . . which any individual standing in a like relation to the plaintiff would not have had.” Fleming v. Dane, 304 Mass. 46, 50 (1939), quoting DesLauries v. Shea 300 Mass. 30, 33 (1938). The element of coercion is required “where the wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct.” Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). The second type of conspiracy requires a “defendant’s substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan.” Id. at 189.
The defendant argues that there is no evidence of coercion and therefore the first type of civil conspiracy cannot be found. The court concludes that the unusual, coercive power described by the language of Fleming was not present here. While the plaintiff may be able to demonstrate that he was induced, perhaps on false pretenses, to enter into the contract with Salmon, nothing in the summary judgment record suggests coercion. Cf. Willett v. Herrick, 242 Mass. 471, 478-80 (1922).
As to the second form of civil conspiracy, the defendant argues that because no claim is currently stated against Salmon and because all claims against Salmon have been finally adjudicated through arbitration, this claim cannot lie. Binding arbitration may have the same preclusive effect as a court judgment, Bailey v. Metropolitan Prop. and Liab. Ins. Co., 24 Mass.App.Ct. 34, 36 (1987), and “one not a parly to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided.” Home Owners Fed. Savings & Loan Assoc. v. Northwestern Fire & Marine Insur. Co., 354 Mass. 448, 455 (1968). Here, Salo and his firm, defendants in the second action, attempt to use judgments from the first action, the binding arbitration. The question is whether the judgment they attempt to use was on the relevant issues, namely, whether Salmon committed tortious conduct which Salo, in turn, substantially assisted as part of a common tortious plan.
In the first proceeding against Salmon, the plaintiffs made claims including fraud and civil conspiracy. The arbitration decision made no award based on these claims and specifically stated that all claims not expressly granted were denied. Therefore, the arbitration award operated as a judgment denying the various fraud-based tort claims. Given that the questions of tort have been resolved in favor of Salmon, it has been determined that he has committed no underlying tort for which Salo can be liable for contributing. Stock v. Fife, 13 Mass.App.Ct. 75, 82 n.10 (1982) (“[T]he doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result”). Therefore, the civil conspiracy claim will not survive the summaiy judgment motion.
IX.Count VII — Negligent Infliction of Emotional Distress
Parker alleges that the defendants’ conduct caused him significant emotional distress. “In order to recover for negligently inflicted emotional distress, a plaintiff ha[s] to prove ‘(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.’ ” Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005), quoting Payton v. Abbott Labs, 386 Mass. 540, 557 (1982).
The defendants argue that the plaintiff has not provided expert testimony on the issue of his physical manifestations of emotional distress. However, no such expert testimony is required. Sullivan v. Boston Gas Co., 414 Mass. 129, 138 (1993). Further, there *571 has been no suggestion that Parker cannot provide such testimony, only that he has not yet. While it is true that a successful negligent infliction of emotional distress case will require proof of more than “mere upset, dismay, humiliation, grief and anger,” at this stage, Parker has met his burden for the purposes of surviving summary judgment. Id. at 137.
X. Count VIII — Negligence: Misrepresentation, Referral, Professional Duties
To recover for negligent misrepresentation, the plaintiffs must prove that the defendants (1) in the course of their business; (2) supplied false information to guide the plaintiffs; (3) in their business transactions; (4) causing and resulting in pecuniary loss to the plaintiffs; (5) through the plaintiffs’ justifiable reliance upon the information; and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information. Nota Contr. Corp. v. Keyes Assocs., Inc., 45 Mass.App.Ct. 15, 19-20 (1998).
The plaintiffs argue that Salo directed them to the contractor and then assured them the contractor’s bid was a realistic estimate, despite knowing at the time it was submitted that it was not. They allege that they were guided by Salo’s false statements and that as a result, Parker entered into a contract that cost the plaintiffs substantially more than originally planned. Parker and Rekrap allege that as a result, they paid more for the building than it was worth. Based on the facts as alleged, the defendants’ denials, Salo’s failure to explain why he did not anticipate certain costs, such as the cost of meeting earthquake codes for commercial buildings, and the dispute over what the defendants communicated to the plaintiff about the cost estimate, the court concludes there are disputed issues of material fact relevant to this claim.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants’ Motion for Summary Judgment is ALLOWED as to Count VI, civil conspiracy, and otherwise DENIED.

 “Where, as here, parties negotiate orally as to the terms of an agreement while intending to execute a written contract, the parties generally are not bound until the contract is signed. If, however, the parties orally agree to the essential terms of the transaction, it may be inferred that they intended to bind themselves at that time and that the ‘writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms.’ ” Id. at 407-08, quoting Rosenfield v. United States Trust Co., 290 Mass. 210, 216 (1935).